Stephen B. Coleman (State Bar #021715)
**PIERCE COLEMAN PLLC**
7730 East Greenway Road, Suite 105
Scottsdale, Arizona 85260
Tel. (602) 772-5506
Fax (877) 772-1025
Steve@PierceColeman.com
*Attorneys for Defendant City of Phoenix*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Turiano, an individual,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a municipal corporation,<br><br>Defendant, | Case No: CV-21-01428-PHX-MTL<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE TO THE COURT AND REQUEST FOR ORDER** |

Defendant City of Phoenix (the "City" or "Defendant") submits the following Response to Plaintiff's Notice to the Court and Request for Order (the "Notice").

Plaintiff's Notice is flawed for multiple reasons. To begin, Plaintiff's requested relief – an injunction preventing the City from investigating or disciplining any departmental witnesses during the pendency of this lawsuit – is unavailable as a matter of law because it is entirely unrelated to Plaintiff's sole cause of action for an alleged violation of his Fourth Amendment rights.

Plaintiff's Notice is also substantively deficient. Without bothering to cite any supporting facts, Plaintiff attempts to paint a grossly misleading picture of the City's conduct as retaliatory. Contrary to Plaintiff's conclusory allegations, however, the City did not investigate a witness for retaliatory reasons. Rather, the undisputed record shows

1

that the witness violated the clear and unmistakable language of a Phoenix Police Department Operations Order by publicly releasing a draft investigation report.

For these reasons, which are discussed in detail below, this Court should reject Plaintiff's Notice and award the City its attorneys' fees.

## FACTUAL BACKGROUND

### The Phoenix Police Department's Disciplinary Policies Require That Draft Investigation Reports Be Treated As Confidential.

Under Phoenix Police Department ("PPD") Operations Order 3.19, certain police officers who are facing discipline are given the opportunity to participate in an Investigative Review Process ("IRP"), which allows for a dialogue regarding draft investigative results. [Phoenix Police Department Operations Order 3.19 at Section 8, attached as Exhibit 1] As part of the IRP, the PPD provides the law enforcement officer and/or representative with a draft internal investigation report with proposed findings. The law enforcement officer is then given 21 days to review the draft "and make note of any issues in dispute." [*Id.*] Thereafter, the law enforcement officer is permitted to share feedback on the draft report at an investigative review meeting with his or her Commander and members of the Professional Standards Bureau ("PSB"). [*Id.*]

Because of the sensitivity of this process, the City has adopted certain measures to safeguard the confidentiality of draft investigation reports. Upon the conclusion of the investigative review period, the employee and/or representative is required to "return all copies of the 'Draft' Internal Investigation Report," except that the employee may retain one copy until the final report is issued, for comparative purposes. [*Id.*]

In addition, Operations Order 3.19 expressly states that:

Employees **will not**:

• Make copies of the "Draft" Investigation Report form/packet.

• Provide copies of the "Draft" Investigation Report form/packet to the media.

• Make the "Draft" Investigation Report form/packet available to the public.

[*Id.* (emphasis in original)]

2

This confidentiality requirement serves several important functions. For example, it helps insulate the investigation from external influences, such as lobbying efforts by the public or other officers. It also protects officers from reputational damage in the event that the PPD's findings of misconduct are modified or withdrawn. By illustration, if an officer persuades the PPD that no discipline is warranted, he or she may face unfair stigmatization if a draft report with contradictory findings is released to the public. In addition, the confidentiality requirement encourages candid participation in the important IRP process.

As set forth below, Plaintiff's Notice seeks to shield an officer from accountability for violating the requirements of Operations Order 3.19.

### Officer Michael Thomas Publicly Released A Draft Investigation Report In Violation Of The PPD's Operations Orders.

As noted in previous filings in this lawsuit, the City is conducting an ongoing investigation regarding the creation, meaning, and dissemination of a challenge coin depicting a protester being hit in the groin with a non-lethal munition.

On or about August 16, 2021, the City completed a draft report regarding the conduct of three officers who were found to have violated PPD Operations Orders by distributing the challenge coin in the workplace and/or describing the challenge coin to members of the public. [Thomas Affidavit at Exhibit A (Doc. 10-2)] The report, which has a prominent "Draft" stamp on each page, is governed by the confidentiality provisions set forth above. The draft report is also subject to revision through the IRP process.

None of the three officers who are the subject of the draft report are parties to this lawsuit. Additionally, the draft report does not relate to any request by the City for officers to make personal cell phone data available for inspection, which is the central issue in this litigation. [*Id.*]

On August 25, 2021, Michael Thomas ("Thomas"), a Phoenix police officer and Representative for the Phoenix Law Enforcement Association (a labor organization that represents rank-and-file police officers at the PPD), submitted an affidavit in support of

Plaintiff's request for a preliminary injunction. [*Id.* at ¶¶ 1-2] Thomas's affidavit includes a copy of the draft investigation report attached as Exhibit A.

By consenting to the filing of an unsealed copy of the report, Thomas was responsible for placing the content in the public domain, which directly contravenes the PPD's prohibition against making "the "Draft" Investigation Report form/packet available to the public." [Exhibit 1] Thus, there can be no debate that Thomas violated Operations Order 3.19.[1]

On September 2, 2021, the City served Thomas with a Notice of Investigation and conducted an interview regarding his breach of confidentiality. [Notice of Investigation, attached as Exhibit 2][2] Contrary to Plaintiff's unsupported speculation in the Notice, the City's investigation was not motivated by Thomas's testimony in this matter, but his clear disregard of the restriction on publicly disclosing a draft report – a policy he should be well acquainted with given his role as a representative of police officers in the IRP process. [Thomas Affidavit at ¶¶ 2-3 (Doc. 10-2)]

Predictably, just days after Thomas's disclosure, a journalist posted the draft report on Twitter. [https://twitter.com/DaveBiscobing15/status/1435670790129684486?s=20]

## ARGUMENT

I. **PLAINTIFF HAS FAILED TO ARTICULATE ANY LEGITIMATE BASIS FOR THE INJUNCTIVE RELIEF REQUESTED IN THE NOTICE.**

Plaintiff's Notice is both procedurally and substantively flawed. As an initial matter, Plaintiff's unorthodox filing, which is styled as a "Notice to the Court and Request for Order," boils down to a request for a preliminary injunction without a hearing.

---

[1] Plaintiff does not even attempt to argue that Thomas's disclosure of the draft report did not violate Operations Order 3.19. Instead, he states that Plaintiff's counsel was responsible for filing the document with the Court. This does not, however, absolve Thomas of responsibility since Thomas presumably authorized the filing.

[2] Plaintiff may also bear some responsibility for authorizing the filing of the draft report, but the City narrowly limited its investigation to Thomas's actions because the draft report was included as an exhibit to Thomas's affidavit.

4

Plaintiff cannot avoid this fact by cloaking the Notice with an ambiguous title.

When a party seeks to enjoin conduct (as Plaintiff has done here), the proper vehicle is to move for entry of an injunction pursuant to Federal Rule of Procedure 65. This, of course, triggers the moving party's burden to establish the following elements (which Plaintiff is likely seeking to avoid): "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest." *Nouveau Riche Corp. v. Tree*, No. CV08-1627-PHX-JAT, 2008 WL 5381513, at *4 (D. Ariz. Dec. 23, 2008).

Plaintiff has not made any pretense of attempting to comply with the requirements for obtaining a preliminary injunction. He has failed to analyze the elements, cite meaningful evidence, or provide legal authority for the requested relief. Instead, he relies on threadbare allegations, speculation, and innuendo, all of which is woefully insufficient to meet his burden.

**A.     Plaintiff's Requested Relief Is Unavailable As A Matter Of Law.**

Plaintiff's Notice fails in the first instance because the requested injunction falls outside the jurisdiction of this Court. As the Ninth Circuit held in *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*: "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." 810 F.3d 631, 633 (9th Cir. 2015). In explaining this rule, the Ninth Circuit stated:

> We hold that there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.' *De Beers Consol. Mines*, 325 U.S. at 220, 65 S.Ct. 1130. Absent that relationship or nexus, the district court lacks authority to grant the relief requested.

*Id*.  Here, Plaintiff is barred from obtaining the requested injunctive relief because there is an insufficient nexus between his Fourth Amendment claim (which involves the inspection of personal cell phone data) and his request to enjoin the City from investigating and/or disciplining Thomas and other witnesses.

The District of Columbia's decision in *Bird v. Barr*, which applies the same rule articulated by the Ninth Circuit in *Pac. Radiation Oncology*, illuminates the fatal flaws with Plaintiff's Notice.  No. 19-CV-1581 (KBJ), 2020 WL 4219784 (D.D.C. July 23, 2020).  There, the plaintiffs argued that injunctive relief was necessary "to protect the judicial process from the chilling impact of Defendant's retaliation bordering on constructive discharge against a named plaintiff, which would deter anyone else from coming forward to join this putative class action or from offering truthful testimony in this matter" *Id*. at *1.  Analogous to this matter, the plaintiffs sought "an order preliminarily enjoining the [defendant] 'from engaging in any retaliation against any plaintiff or witness[.]'" *Id*.

Consistent with Ninth Circuit jurisprudence, the court explained that:  "it is important to understand what a preliminary injunction is *not*: it is not a generic means by which a plaintiff can obtain auxiliary forms of relief that may be helpful to them while they litigate unrelated claims.  To the contrary, this Court only possesses the power to afford preliminary injunctive relief that is *related* to the claims at issue in the litigation[.]" *Id*. at *2 (emphasis in original).  In other words, without "a connection between the claim and requested injunction, there is simply no jurisdictional basis for the Court to grant preliminary relief." *Id*.

Applying this principle, the Court determined that the requested injunction was outside its jurisdiction, reasoning as follows:

> With respect to the PI motion at issue here, the disconnect between the underlying claims in the lawsuit and the alleged basis for preliminary relief could not be more evident. This is because, in their complaint, Plaintiffs allege that the FBI authorized, or engaged in, sex-discrimination while Plaintiffs were in the FBI training academy and seek, *inter alia*, to enjoin such conduct, but in the PI motion, Plaintiffs request an injunction 'to protect

all of the name[d] plaintiffs' from potential reprisals for participating in this legal action as a general matter. The requested preliminary injunctive relief bears no resemblance to the relief that the Plaintiffs request in the underlying action.

*Id*. at *1 (internal citations omitted). The same rationale applies here.

Similar to *Barr*, Plaintiff's request to enjoin the City from investigating and/or disciplining Thomas for disclosing a draft report (along with an indefinite ban on investigations of any departmental witnesses) is unrelated to Plaintiff's sole claim that the City has violated his Fourth Amendment rights by asking to inspect the data from his personal cell phone. Thus, Plaintiff cannot, as a matter of law, obtain the requested injunction.[3]

### B. Plaintiff Has Failed To Demonstrate A Strong Likelihood Of Success On The Merits.

Even putting aside the jurisdictional issue, Plaintiff's Notice is substantively flawed. To show retaliation, Plaintiff must prove facts establishing a causal nexus between Thomas's alleged protected activity and an adverse action by the City. *See e.g.*, *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) ("Karam alleged that the defendants instigated the charges against her in retaliation for her appearing at city council meetings and speaking out on issues of public concern. She failed, however, to present evidence establishing a nexus between the exercise of her First Amendment rights and her prosecution. In short, she failed to establish a genuine issue of material fact on the causation element of her claim."); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."). Plaintiff's Notice is glaringly devoid of any evidence that could satisfy this element.

---

[3] This Court, of course, has other tools at its disposal to address witness tampering, such as the imposition of sanctions. In this case, however, the City has acted for legitimate, non-retaliatory reasons, so it is unnecessary to explore this issue.

7

Factually, Plaintiff contends, at most, that Thomas provided an affidavit in the lawsuit and was subsequently interviewed regarding his clear policy violation. Otherwise, Plaintiff relies on conclusory, self-serving statements that are devoid of factual support and carry no evidentiary weight, such as the following:

- "Defendant has used the filing of the exhibit as a ruse for engaging in the intimidation of Officer Thomas for his role as a witness in support of Plaintiff's request for injunctive relief."
- "Plaintiff is concerned that the Defendant will continue to intimidate and harass this witness by subjecting him to discipline strictly for his role as an affiant and witness in this litigation."
- "Plaintiff is also concerned about reprisal for other witnesses who may testify on his behalf."

[Notice at p. 2]

Plaintiff cannot seriously contend that these threadbare statements are sufficient to establish a strong likelihood of success on the merits. Indeed, for Plaintiff to request an injunction based on such flimsy "evidence," is tantamount to asking this Court to establish a blanket rule that witnesses in employment cases are immune from accountability for their actions.

Plaintiff's allegations in this case are comparable to the "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court found insufficient to support a claim in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). There, the plaintiff alleged that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]'" to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Id.* at 1951. The Supreme Court rejected these allegations, stating:

> These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim, 550 U.S., at 555, 127 S. Ct. 1955, namely, that petitioners adopted a policy 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.' *Feeney*, 442 U.S., at 279, 99 S. Ct. 2282. As such, the allegations are conclusory and not entitled to be assumed true. *Twombly*, *supra*, 550 U.S., at 554-555, 127 S. Ct. 1955.

*Id*. Here, Plaintiff's bare allegation that the City investigated Thomas in retaliation for his testimony is similarly bereft of factual support and should be disregarded by this Court.

Plaintiff has not only failed to supply evidence that the City acted with a retaliatory motive, but the uncontradicted record shows otherwise. It is undisputed that Thomas publicly released a draft investigation report. In fact, the document resides on this Court's docket, where it was publicly available until the Court granted the City's motion to seal on September 9, 2021. It is also uncontested that the City prohibits the public release of draft investigations that are shared with employees as part of the IRP. Under these circumstances, there can be no doubt Thomas's actions violated the requirements of Operations Order 3.19. Thus, for Plaintiff to label the City's actions as retaliatory is a gross mischaracterization of the record. A more accurate narrative is that Plaintiff is attempting to obstruct the City from enforcing its legitimate work-related policies.

In light of Thomas's conduct, the PPD had the right and responsibility to conduct an investigation (and to take disciplinary action, if deemed appropriate). Thus, there is no basis to enjoin the City from taking further steps to address Thomas's violation.

Moreover, Plaintiff has presented no evidence that the City poses a retaliatory threat to other potential witnesses, as he groundlessly speculates in the Notice. Once again, the *Bird* decision is instructive. As alternative grounds for denying the request to enjoin the employer from retaliating against plaintiffs and witnesses, the court found no likelihood of success on the merits:

> In the absence of any *evidentiary* support for the speculative suggestion that the FBI will target Plaintiffs and witnesses going forward, this Court cannot find that Plaintiffs have established any of the traditional PI factors. Nor is this Court *aware* of any authority that supports Plaintiffs' implicit suggestion that a preliminary injunction can properly issue to address potential conduct of a defendant that is neither established nor imminent, whether to ensure the participation of parties and witnesses or otherwise.

*Bird*, 2020 WL 4219784, at *4 (emphasis in original).

In this case, Plaintiff's Notice is equally speculative regarding the purported threat of future retaliation by the City. Thus, even if injunctive relief was available (which it is

9

not), Plaintiff's request would fail based on his inability to establish a strong likelihood of success.

Finally, it is worth noting that Plaintiff's requested injunction is vastly overbroad. While Plaintiff's Notice is sorely lacking in factual support, it is unrestrained in the scope of the proposed relief. Undeterred by the paucity of evidence of the City's alleged retaliatory motive, Plaintiff asks this Court to issue a sweeping order that prohibits the City from investigating or disciplining *any of his witnesses* (whom he fails to identify) for the *entire duration of this lawsuit* (which could last years). Such a request would be startlingly overbroad even if it was supported by evidence of retaliation. Here, no such evidence exists, so the Court should resoundingly reject Plaintiff's Notice.

### C. The Public Interest And Balance Of Hardships Weigh In Favor Of The City.

Although Plaintiff ignores the public interest and balance of hardships, they are worthy of mention. These factors also counsel against injunctive relief.

While the risk of retaliation exists in every employment case, injunctions against investigating witnesses are not commonplace. The policy reasons for this are obvious. If, as Plaintiff appears to suggest, the mere combination of protected activity followed by an investigation were sufficient to support injunctive relief, then every witness for the plaintiff in an employment-related lawsuit would be immunized against being investigated or disciplined for misconduct. This would create a proverbial "get out of jail free card" allowing witnesses unfettered ability to engage in insubordination and all hosts of policy violations without fear of any repercussions. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (expressing concern that "employers will be paralyzed into inaction" once an employee has engaged in protected activity, which would be "tantamount to a 'get out of jail free' card for employees engaged in job misconduct"). Not only is this an absurd proposition, but it has been repeatedly rejected by the courts. *See, e.g., Buhl v. Abbott Lab'ys*, 817 F.App'x 408, 411 (9th Cir. 2020) ("Buhl cannot insulate himself from being disciplined for unprotected misconduct by pairing that misconduct with protected

whistleblowing."); *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 977–78 (8th Cir. 2006) ("Engaging in protected activity 'does not insulate an employee from discipline for ... disrupting the workplace.'"); *Robert v. City of S. Bend*, No. 2:15CV173-PPS, 2018 WL 276323, at *4 (N.D. Ind. Jan. 2, 2018) ("An employee's engaging in protected activity cannot immunize him from subsequent investigation, discipline, or termination based on his own inappropriate workplace behavior."). Moreover, these considerations are even more pronounced in cases involving law enforcement (such as this one) given the heightened need for order and efficiency.

With regard to the public interest, it is also important to note that the City is not seeking to stymie Plaintiff's ability to present evidence to this Court – although the City does question the relevancy of the draft report. Instead, the City merely expects that a sworn peace officer will present evidence in a manner that complies with the PPD's Operations Orders. Thomas could have easily accomplished this by seeking leave to file the draft report under seal. In fact, the City would have stipulated to this, if asked.

Finally, the balance of hardships weighs against injunctive relief. On the one hand, if the City determines that discipline is appropriate, Thomas can avail himself of the full panoply of procedural rights afforded to PPD officers who are facing discipline. This will provide protection against unwarranted consequences. On the other hand, a restriction on the City's ability to investigate an officer who so clearly and brazenly violated an Operations Order would be destructive to the orderly and efficient operation of the PPD. For these additional reasons, Plaintiff's request for injunctive relief is flawed.

## **CONCLUSION**

The City respectfully request that the Court deny Plaintiff's Notice on the grounds that (1) the requested relief is jurisdictionally barred; (2) Plaintiff has not even attempted to satisfy the elements for obtaining an injunction; (3) the undisputed evidence shows that the City acted for legitimate non-retaliatory reasons related to Thomas's violation of confidentiality requirements; and (4) the requested relief (which would bar the City from investigating departmental witnesses for an indefinite duration) is grossly overbroad and

wholly unsupported. Finally, because Plaintiff's Notice is so patently flawed, this Court should award the City its attorneys' fees incurred in preparing this response.

RESPECTFULLY SUBMITTED this 13th day of September 2021.

**PIERCE COLEMAN PLLC**

By /s/ Stephen B. Coleman
   Stephen B. Coleman
   7730 East Greenway Road, Suite 105
   Scottsdale, Arizona 85260
   *Attorneys for Defendant City of Phoenix*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2021, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and caused a copy to be electronically transmitted to all ECF registrants:

Michael Napier
Eric R. Wilson
Cassidy L. Bacon
NAPIER, BAILLIE, WILSON,
BACON, & TALLONE, P.C.
2525 E. Arizona Biltmore Circle, Suite 135
Phoenix, AZ 85016-0001
mike@napierlawfirm.com
ewilson@napierlawfirm.com
clbacon@napierlawfirm.com
*Attorneys for Plaintiff*

By: /s/Christina Youngberg